The Law Office of Ryan Lozar, P.C.
305 Broadway, 10th Floor, New York, NY 10007
Tel: (310) 867-1562; Alt. Telephone: (646) 666-8262; Fax: 1-(877) 666-4456
ryanlozar@gmail.com
www.ryanlozar.com



MAY 31, 2017

Re:    Defeo v. County of Suffolk, L.I., No. 16 Civ. 5150 (SJF) (SIL)

Dear Judge Feuerstein:

      I represent Plaintiff in the above-captioned Section 1983 case alleging, among other claims, false arrest and malicious prosecution. Docket No. 5. At the last conference, the Court asked me to write and file a letter relating to Plaintiff's claims. This is that letter. Plaintiff withdraws the claims against Leath. Plaintiff withdraws the conspiracy claims against all Parties. Plaintiff will proceed with his claims against Leibstein, who is subject to Section 1983 liability on these facts. Plaintiff also seeks to proceed with his claims against Flynn. The Plaintiff discusses the facts and law driving these decisions below and I will of course continue the conversation at the June 1, 2017, conference.

    I.      **Leibstein Claims**

         a.  **Facts**

      For roughly seven years, Christopher Defeo worked for Adcomm, a print shop. Exhibit 1. Defeo had check-writing authority for the business. On July 10, 2015, as Defeo communicated with his boss Guy Leibstein regarding payment to a vendor, Leibstein texted Defeo to say "take a $500 check for yourself you have been trying hard." Exhibit 2.

      On or about July 20, 2015, Defeo left Adcomm Digital to start his own printing business elsewhere on Long Island. Exhibit 1. Leibstein reacted angrily, and on July 24, 2015, demanded that Defeo sign a post-separation non-compete agreement. Exhibit 3. Defeo's then-counsel Jason Canales of Moses & Singer, LLP, corresponded with Leibstein and his counsel, Mark Manley, and stated that Defeo would not sign a post-separation non-compete agreement.

      That same week, Leibstein falsely accused Defeo of stealing the July 10, 2015, bonus. On or about July 28, 2015, Defeo's counsel Canales forwarded Manley a copy of the July 10 text to show it was authorized, and the bonus and the text were not contested further. See Exhibit 2.

      On or about July 28, 2015, Leibstein sent Defeo and Canales a non-compete agreement with Defeo's forged signature on it dated May 8, 2013, and announced that Defeo would be bound by it. Exhibit 4. Through counsel, Defeo explained that the forged document was unenforceable.

      On July 30, 2015, Leibstein retaliated by reporting to the police that "an unknown person, possibly Chris Defeo a former employee, stole a company check" Exhibit 5. Leibstein told the police that he would "gather[] more info from bank possibly to upgrade charges." Id.

      On August 28, 2015, Leibstein met with Fourth Precinct Police Officer Dane Flynn at the First Precinct and re-made the false report about the check while making the following request for special handling of the petty offense: "I want Christopher Defeo arrested for this." Exhibit 6. Leibstein falsely stated in that complaint that he was the only person who wrote checks for his print shop. Id. Flynn obliged Leibstein's request and processed the complaint exclusively for full

custodial arrest, despite departmental protocols described, infra, encouraging service of a ticket. On September 22, 2015, Defeo was simply arrested and served over twenty-four hours detained prior to arraignment.

More than one year later, in November 2016, after Defeo made more than eight court appearances, the state court dismissed the false petty larceny charge against him. Exhibit 7. On information and belief, the state court dismissed the petty larceny charge after Leibstein repeatedly refused to produce bank statements showing, as he falsely alleged, that Defeo did not have authority to write Adcomm checks. Exhibit 1 ¶ 21.

### b. Leibstein Liability Under Section 1983

Private individuals who are not police officers may be liable for Section 1983 false arrest and other claims even where there is no claim that he himself "actually restrained or confined a plaintiff[.]" Weintraub v. Bd. of Educ. of City of N.Y., 423 F. Supp.2d 38, 55 (E.D.N.Y. 2006). Under such circumstances, "a claim of false arrest or false imprisonment may lie where a plaintiff can "show that . . . [the private defendants] instigated his arrest, thereby making the police . . . agents in accomplishing their intent to confine the plaintiff." Id. at 56 (citing Carrington v. City of N.Y., 201 A.D.2d 525, 527 (2d Dep't 1994)). Stated differently, "[a] private party . . . even though not an official of the State, can be liable under § 1983. 'Private persons, jointly engaged with state officials in the prohibited action, are acting under color of law for purposes of the statute.'" Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970) (citing U.S. v. Price, 383 U.S. 787, 794 (1966)). A private party's "joint engagement" with state officials, making the private party's actions under color of state law, is wholly different from civil conspiracy. See Lugar v. Edmonson Oil Co., 457 U.S. 922, 942-41 (1982). Instead, joint engagement is a fair-attribution test. See Weintraub, 423 F. Supp. at 57 (citing Lugar, 457 U.S. at 939).

In applying Lugar, this Court in Friedman v. N.Y.C. Administration for Children's Services, No. 04 Civ. 3077 (ERK), 2005 WL 2436219, at *7 (E.D.N.Y. 2005), found that a private doctor acted under color of law when he falsely reported evidence to law enforcement officials about child abuse to curry favor with his girlfriend and her sister. The Friedman Court began by noting "the precept that an individual with the requisite criminal intent may be held liable as a principal [criminal actor] if he is a cause in fact in the commission of a crime, notwithstanding that the proscribed conduct is achieved through the actions of innocent intermediaries." (citing U.S. v. Margiotta, 688 F.2d 108, 131 (2d Cir. 1982)). "[T]here is no logical reason why [that same reasoning] should not apply in the context of a civil action." Friedman, 2005 WL 2436219 at *7. Here, like the doctor in Friedman, who falsely and knowingly imported state officials to deprive the Section 1983 plaintiff of rights, Leibstein falsely and intentionally imported Flynn and, by extension, other state actors, to deprive Defeo of his liberty. This was not a matter of negligently leaving a material detail out of a police report.

In Weintraub, too, this Court found that a jury could find that the private party defendant teacher, among others, had acted under color of law in connection with Section 1983 in instigating the plaintiff's arrest because "there are genuinely disputed facts over whether [the] defendants intended by their actions to have [the] plaintiff falsely arrested." Weintraub, 423 F. Supp.2d at 58. For example, Weintraub noted that an issue of fact existed as to whether the private party defendant acted in good or bad faith in making the initial false report to police that caused the plaintiff's arrest. Here, Leibstein, like the Weintraub defendant, specifically asked for Defeo's arrest. Exhibit 6. And here, like in Weintraub, the facts demonstrate forcefully that Leibstein made the false report about Defeo in bad faith for the sole purposes of having him unlawfully arrested using the police power.

Next, a case in which a private party was found at pleading to have acted under color of state law for the purposes of Section 1983 liability is Coakley v. Jaffe, 49 F. Supp.2d 615, 624 (S.D.N.Y. 1999) (Rakoff, J.), in which the Southern District rejected the private defendants' argument that the Section 1983 plaintiffs had failed to plead that the private defendants acted "under color" of law for the purposes of a federal Section 1983 false arrest claims. The Coakley Court stated that

> [p]rivate persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 [claims], even if the state actor himself is immune from liability. Here, the plaintiffs allege that [the private actors] willfully caused [the defendant district attorney] to violate plaintiffs' rights by manipulating the evidence presented to the Grand Jury. Drawing every reasonable inference in favor of the plaintiffs, the Court concludes that plaintiffs have, at least for present purposes, sufficiently pled the existence of joint action that warrants treating [the private actors] as state actors for purposes of assessing plaintiffs' federal false arrest claim.

Again, joint engagement is wholly different from conspiracy. The Second Circuit has held that "[t]o hold a private individual . . . liable for false arrest under § 1983 and New York law, 'a plaintiff must show that the defendant took an active role in the arrest of the plaintiff, such as giving advice and encouragement or importuning the authorities to act, and that the defendant intended to confine the plaintiff.'" Vlach v. Staiano, 604 F. App'x 77 (2d Cir. May 21, 2015) (citing Lowmack v. Eckerd Corp., 303 A.D.2d 998 (4th Dep't 2003)). Here, as described in the Leibstein and Flynn fact sections, the record shows Leibstein's active and officious influence in telling the first officers that he would gather information from bank records to "possibly upgrade the charges" against the "unknown person" who he later fingered as Defeo without producing any corroborating documents. Exhibit 5. Then, Leibstein implored Flynn to physically confine Defeo on the single false petty larceny charge, and Flynn obliged, despite departmental encouragement to the contrary. Exhibit 6.

In Bacquie v. City of N.Y., No. 99 Civ. 10951 (JSM), 2000 WL 1051904, at *2 (S.D.N.Y. July 31, 2000), the Court held that the Section 1983 plaintiff adequately showed that the private defendant acted under color of state law where the facts demonstrated that police officers responded to the private defendant's complaint by doing something more than follow ordinary procedure in response to defendants calling police and swearing a complaint. Similarly, here, as described in the Flynn section, infra, the record supports that Leibstein acted under color of state law because Flynn, like the officers in Bacquie, diverged from ordinary procedure, i.e., he permitted Leibstein to twice submit an unsworn complaint on a form stating plainly that it was for sworn complaints, and he leapfrogged past all DAT protocols in order to grant Leibstein's request that Defeo be punished with custodial arrest. Exhibit 6 (Leibstein requesting custodial arrest); Exhibit 10 (Flynn skipping the parts of warrant request asking on his ticket service efforts); Exhibit 12 (Flynn failing to complete the warrant control sheet contemplating ticket service).

Finally, in Fowler v. Robinson, No. 94 Civ. 836 (TJM), 1996 WL 67994, at *6 (N.D.N.Y. Feb 15, 1996), the court held in a case where a complaining witness allegedly falsely reported to an official that the plaintiff committed a criminal offense, which she accompanied by statements that, among other things, she "wanted [the Section 1983 plaintiff] arrested," a genuine issue of material fact existed as to whether the private party "instigated [the Section 1983 plaintiff's] arrest." See Weintraub, 423 F. Supp.2d at 58 (rejecting the defendants' claims that the "civilian" nature of the police complaint insulated them from Section 1983 liability because such a defense requires that

good faith be established, and stating that "[i]f a victim makes false statements to the police, with the intent to have an innocent person arrested in violation of his Fourth Amendment rights, she may not only be held accountable for false imprisonment under state tort law, but under federal law, for invoking the state's power to intentionally violate a citizen's constitutional rights").

In light of the foregoing, Defeo respectfully argues that his Section 1983 claims against Leibstein are made in good faith on this record and asks the Court to allow him to proceed to discovery on them.

II.  Flynn Claims

   a. Facts

On August 28, 2015, Fourth Precinct Officer Flynn met with Leibstein in the First Precinct so that Leibstein could write out a sworn statement against Defeo on Form PDCS-1165b. This particular form is for a complaining witness's sworn criminal accusation against another individual. Form PDCS-1165b states that an officer may not treat a complainant's accusations made therein as "being duly sworn" if they are not, and it directed Flynn to physically cross those words off of the page if Leibstein is not, in fact, duly sworn. Exhibit 6.

Leibstein did not duly swear to the statement. Regardless, Flynn treated the statement as sworn and repeatedly and affirmatively stated that Leibstein gave a sworn statement, at times citing his use of PDCS-1165b to make the point. Exhibit 8; Exhibit 9; see Virgil v. Town of Gates, 455 F. App'x 36 (2d Cir. 2012) (citing U.S. v. Hernandez, 85 F.3d 1023, 1028 (2d Cir. 1996), for the proposition that in assessing probable cause, "specific factual statements of observed criminality made under penalty of perjury 'are significantly more reliable' than unsworn statements"). Other than coming into the First Precinct to make an unsworn statement against Defeo, Leibstein brought in no documentary evidence to corroborate his unsworn statement. Exhibit 8. Yet one month earlier, when Leibstein made his first initial unsworn statement, he told officers that he would gather such evidence. Thus the only difference between the initial officers' and Flynn's treatment of Leibstein was that Flynn caused Defeo to be arrested on the same accusation that the first officers would not.

On September 7, 2015, Flynn submitted a misdemeanor information and requested an arrest warrant for Defeo. Exhibit 9. Flynn skipped the parts of the form relating to service of a ticket without arrest. Exhibit 10.[1] It appears that this petition was denied and required rewriting because Flynn prepared new documents on September 15, 2015. There is no information in the record for why the first information and/or request were denied. On information and belief, the September 15, 2015, warrant request may never have been granted, either, as Defendants have been unable to produce a warrant. Discovery contains a proposed but unsigned warrant that bears no warrant number. Exhibit 11.

On February 1, 2016, in connection with the Internal Affairs Bureau's ("IAB") investigation into the Defeo arrest, Flynn submitted an unsworn statement to the IAB regarding his handling of

---

[1] Relatedly, the record contains an incomplete warrant control sheet which cautions that "every warrant must have a number and a control sheet," an instruction which on its face appears designed to discourage full custodial arrests for DAT offenses in light of the sheet's request for detailed reports of ticket service efforts before any warrant can be forwarded or executed. Exhibit 12. Like the arrest warrant request form, the warrant control sheet is incomplete insofar as it contains no information regarding any of Flynn's efforts to simply serve Defeo with a ticket. Id.

this case.² Exhibit 13.³  Flynn's unsworn statement states that he completed September 7, 2015, warrant request paperwork, which he then says was forwarded by someone to the court. Id.  He does not discuss the outcome, the draft September 15, 2015, request, or the outcome to that application, either. Id.

### b. Flynn False Arrest Liability

In Defeo's claims against Flynn, he pleaded false arrest and conspiracy claims.  On the Court's request, Defeo will withdraw the conspiracy claim without any discovery, despite the fact that the record permits a reasonable inference supporting it.

However, Defeo respectfully requests that he be permitted to perform discovery on the false arrest claim against Flynn, where reasonable inferences drawn in his favor from the facts already in the record show that it is brought in good faith.  See Schechter v. Comptroller, 79 F.3d 265, 270 (2d Cir. 1996); Aguilera v. Cty. of Nassau, 453 F. Supp.2d 601, 607-08 (E.D.N.Y. 2006) (denying motion to dismiss Section 1983 claims when evidence bearing on probable cause exists because "all must be considered" and the court must award "the plaintiff every possible favorable inference").  I will be prepared to discuss the Court's view on the subject at conference; meanwhile, Defeo respectfully asks that the Court consider his argument on the subject, set forth below.⁴

As discussed above, on the limited record in Defeo's possession prior to discovery, Flynn appears to have permitted Leibstein to make an unsworn accusation against Defeo twice on a form cautioning that accusations must be sworn.  Then, Flynn repeatedly stated, including to the DA's Office, that Leibstein's accusation was sworn.  Exhibit 6; Exhibit 8 (stating it was sworn); Exhibit 10 (stating it was an affidavit, implying it was sworn); see Virgil v. Town of Gates, 455 F. App'x 36 (2d Cir. 2012) (citing U.S. v. Hernandez, 85 F.3d 1023, 1028 (2d Cir. 1996), for the proposition that "specific factual statements of observed criminality made under penalty of perjury 'are significantly more reliable' than unsworn statements"); see McColley v. County of Rensselaer, 740 F.3d 817, 824 (2d Cir. 2014) (discussing how materiality of an omitted fact may be determined by whether an officer would have affirmatively stated the opposite fact to support probable cause).

In Singer v. Fulton County Sheriff, 62 F.3d 110, 119 (2d Cir. 1995), the Second Circuit held that generally, an arresting officer advised of a crime by a person claiming to be a victim, who has signed a related complaint charging someone else with a crime, has cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity.  "The most common situation in which doubts as to veracity arise is when there exists a prior relationship between the victim and the

---

² Flynn submitted this unsworn statement in response to the Court's recent request for an affidavit relating to Defeo's conspiracy claims.  "By definition, an affidavit is a sworn document, declared to be true under the penalties of perjury."  11 Moore's Federal Practice § 56.14[1][b] (Matthew Bender 3d ed.).  In LeBoeuf, Lamb v. Worsham, 185 F.3d 61, 66 (2d Cir. 1999), the Second Circuit noted that an unsworn declaration might properly be considered a declaration pursuant to 28 U.S.C. § 1746 if it says, in sum and substance, "I declare under penalty of perjury . . . that the foregoing is true and correct."  See 28 U.S.C. § 1746.  However, in Flynn's unsworn statement, he took pains to say the opposite, i.e., "[T]his document may not be admissible against me in any criminal proceeding." Exhibit 13.

³ I asked Defendants for the IAB records, and not just the unsworn statements produced in response to the Court's request for sworn affidavits.  Defendants refused to produce them.

⁴ At the outset, Defeo principally asks that the claim not be dismissed because Defense Counsel for Flynn stated on the record at the last conference that they viewed Defeo's claims as presenting a genuine issue of material fact.

accused that gives rise to a motive for a false accusation," for example, an employer-employee relationship in which the employment relationship recently terminated and turned acrimonious. Mistretta v. Prokesch, 5 F. Supp.2d 128, 133 (E.D.N.Y. 1998). "[P]robable cause is a fluid concept turning on the assessment of probabilities in a particular factual context not readily, or even usefully, reduced to a neat set of legal rules." Soller v. Boudreux, No. 12 Civ. 0167 (SJF) (SIL), 2015 WL 500492, at *11 (E.D.N.Y. Feb. 3, 2015) (citing Harris v. O'Hare, 770 F.3d 224, 234 (2d Cir. 2014)). "The 'probable cause requirement must be applied by reference to the circumstances then confronting the officer[.]'" Id. (citing Tiernev v. Davidson, 133 F.3d 189, 196-97 (2d Cir. 1998)).

      Here, the circumstances confronting Flynn included the known unsworn nature of the Leibstein accusation, which bears forcefully on the question of probable cause in a case in which also Leibstein showed no corroborating records and bizarrely demanded that Flynn punish Defeo pre-arraignment with custodial arrest.  Defeo argues that a reasonable jury could find the totality of these circumstances as raising a huge red flag bearing on probable cause, i.e., It was unreasonable for Flynn not to question the veracity of Leibstein qua witness given his status as an angry employer with acrimonious feelings toward a former employee demanding that the employee be immediately incarcerated for a petty crime when the County discouraged such practice, and when Leibstein would not swear to the allegations.  Exhibit 6; Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996) ("The failure to make a further inquiry when a reasonable person would have done so may be evidence of a lack of probable cause.").  Presumption of innocence in favor of an accused is undoubted law, axiomatic and elementary, but Leibstein demanded punishment for Defeo first, and Flynn obliged.  See Taylor v. Kentucky, 436 U.S. 478 (1978).  A jury may find that Leibstein's insistence that his former employee Defeo be jailed for a petty, undocumented offense, combined with Flynn's willingness to comply even as Leibstein declined to swear to his accusations, shows that Flynn's claimed probable cause falls short of reasonable.  A reasonable person would not view the same situation with such blinders.  Finally, Flynn did not receive any documentary evidence from Leibstein that Defeo was the "unknown party" that Leibstein wanted to report one month prior but needed to gather evidence on so that he could "upgrade charges" against them, and whom he thought at the time only might possibly be Defeo.  Exhibit 5.

      Whatever the reason for Flynn's response to Leibstein, Defeo respectfully argues that at this early stage of the litigation, pre-discovery, when reasonable inferences are to be drawn in Defeo's favor, Leibstein's peculiar way of making the complaint, and Flynn's peculiar handling of it, together raise sincere, good-faith questions regarding whether Flynn reasonably had probable cause to believe that Defeo committed petty larceny.  Defeo consequently asks the Court not to dismiss his claim sua sponte, particularly when Defendants themselves announced on the record at the last conference that thought there were issues of material fact here.  See Aguilera v. Cty. of Nassau, 453 F. Supp.2d 601, 607-08 (E.D.N.Y. 2006) (stating that at pleading stage inferences should be drawn in favor of plaintiff).[5]

---

[5] Flynn's efforts to honor Leibstein's request that Defeo be punished with pre-arraignment jailing meant looking past not just New York Criminal Procedure Law's authorization of DAT service for a petty larceny charge, see N.Y. Crim. Pro L. §§ 150.20, 150.40, 150.60, but past departmental protocols encourage and even require that officers initially pursue voluntary appearance for petty offenses prior to seeking full custodial arrest of that person pursuant to a warrant, Exhibits 10, 12.  Ignoring these statutory and regulatory suggestions in handling Leibstein's complaint is not per se unconstitutional, but it bears on whether Flynn was acting reasonably in finding Leibstein a credible witness, which in turn does bear on the constitutional question of probable cause.

### III. David Leath

#### a. Background

On September 22, 2015, Leath went to Defeo's home alone, and Defeo greeted Leath when he saw Leath in his backyard. Exhibit 1. According to Defeo, he was confused and, when he asked Leath the purpose of his visit, Leath was "confused" as well, and asked Defeo to accompany him to his vehicle, which was parked in front. Id. Defeo did, and leaned against Leath's car while Leath radioed for information regarding what to do. Id. According to Defeo, Leath seemed "bewildered and upset" when he received his instructions, which were apparently to make a full custodial arrest of Defeo. Id. In Leath's January 30, 2016, unsworn statement to IAB about the Defeo arrest, which he expressly stated was not meant to be used against him in any context, Leath says that he was told that there was a warrant for Defeo's arrest. Exhibit 14.[6]

However, as described, supra, Defendants have not produced the warrant. Leath's unsworn statement says that he attached a copy of that warrant, but he did not. Id.; see also Exhibit 7 (twice-unsworn Leibstein complaint); Exhibit 8 (reference to the submission of an apparently unsuccessful September 7 warrant request); Exhibit 9 (slash mark across the September 7 warrant request date and a handwritten reference to a "W/R September 17"); Exhibit 10 (copy of a September 15 replacement warrant request directly seeking an arrest warrant); Exhibit 11 (unsigned and unexecuted proposed warrant with no warrant number); Exhibit 12 (incomplete warrant control sheet stating that all warrants must have a number); cf. Exhibit 15 (arrest report referencing a warrant not in production); Exhibit 16 (warrant request with a magistrate's signature but with no corresponding warrant in production).

Although Leath's unsworn statement says that he never knew what the complaint against Defeo was, Exhibit 14, Leath's arrest report belies the claim because it sets forth Leibstein's allegations in great detail, Exhibit 15. This is relevant because when Leath told Defeo about the petty larceny charge, the Parties agree Defeo then told Leath the Leibstein story, and the Parties agree that Defeo showed Leath the July 10, 2015, text from Leibstein authorizing the $500 bonus check because "you have been trying hard." Exhibit 2. Leath admits to reading the text message, but states that "after viewing the text messages I did still have probable cause." Exhibit 14.

In Defeo's sworn affidavit, he says that Leath's detention of him at his home began near nine o'clock in the morning and that he was not arraigned for more than twenty-four hours. Exhibit 1; INS v. Delgado, 466 U.S. 210, 215 (1984) (stating that detention within the meaning of the Fourth Amendment begins when a person reasonably believes he is not free to leave).

#### b. Dismissal of Leath Claims

In Defeo's claims against Leath, he pleaded, among other things, false arrest, unreasonably excessive detention, and failure to intervene claims. On consideration of the Court's suggestion that Defeo reconsider his Leath claims, Defeo is inclined to move to withdraw them and will do so at the

---

[6] As noted above when discussing Flynn's unsworn statement, Leath submitted this unsworn statement stating that it could not be used against him in response to the Court's directive that they file sworn affidavits. Exhibit 14.

June 1, 2017, conference.[7]  Insfoar as Leath has knowledge relevant to this matter even as a non-party, which Defeo will continue as against Leibstein and hopefully Flynn, Defeo will move the Court to so order a FRCP 45 deposition subpoena relating to Leath, which I will bring to conference.

                                    Sincerely,

                                    Ryan Lozar

                                    Ryan Lozar

---

[7] Because Rule 41(a)(1)(B) provides that a court may grant such a motion upon such terms as it deems appropriate, and because discovery has not begun yet in this case, Defeo respectfully requests that the Court dismiss the claims against Leath without prejudice as Rule 41(a)(1)(B) allows.  See Fed. R. Civ. P. 41(a)(2).