FILED
CLERK
4:33 pm, Nov 01, 2018
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CHRISTOPHER DEFEO,

                              Plaintiff,

   -against-

GUY LEIBSTEIN and ADCOMM,

                              Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**
16-CV-5150 (SJF) (SIL)

FEUERSTEIN, J.

      Plaintiff Christopher Defeo ("Plaintiff" or "Defeo") commenced this action pursuant to 42 U.S.C. §1983 and New York state law alleging violations of the United States and New York Constitutions by defendants Guy Leibstein ("Leibstein") and Adcomm ("Adcomm" or the "Corporate Defendant) (collectively, "Defendants").[1] Currently before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Motion, Docket Entry ("DE") [86]. For the reasons set forth below, the motion is granted and the case dismissed.

## I. BACKGROUND

### A. Relevant Facts[2]

      Leibman is the owner and operator of Adcomm, a printing business located in West Babylon, New York. Defeo performed work for Adcomm from approximately 2009 through

---

[1] The amended complaint also alleged claims against the County of Suffolk, Police Officer Dane Flynn, and Police Officer Lee (collectively, the "County Defendants"). Plaintiff withdrew all his claims against the County Defendants in 2017. See Minute Entry for 3/21/17, DE [32]; Minute Entry for 6/1/17, DE [37].

[2] The facts are undisputed unless otherwise noted. The facts are drawn from the Defendants' Statement Pursuant to Local Rule 56.1 ("Defs' 56.1 Stmt"), DE [88], Declaration of Joseph Ferrante in Support of Defendants' Motion for Summary Judgment ("Ferrante Decl"), DE [87]; Plaintiff's Responsive Rule 56.1

July 2015. On July 10, 2015, Defeo wrote a business check to himself in the amount of $500.00 (the "disputed check"). Defeo claims he received a text message from Leibstein telling him to "[t]ake a $500 check for yourself, you have been trying hard." Pl's 56.1 Stmt ¶27. Leibstein denies having sent this message. On approximately July 20, 2015, Defeo ceased working at Adcomm.

Between July 24 and August 5, 2015, Leibstein and/or his attorney communicated with Defeo and/or his attorney on a range of issues including, *inter alia,* the return of Adcomm equipment allegedly in Defeo's possession, Leibstein's request that Defeo execute a non-disclosure agreement, the validity of a prior non-compete document, and the disputed check. *See* Lozar Decl., Exs. 6-14. By July 28, 2015, Defeo learned that Leibstein was telling third parties that Defeo had stolen from Adcomm. Pl's 56.1 Stmt, ¶34.

On July 30, 2015, Leibstein called 911 to report the disputed check as stolen. According to the Suffolk County Police Department Incident Report generated as a result of the call, Leibstein stated that an "unknown person, possibly Chris Defeo" had stolen a company check. SCPD Report, Lozar Decl., Ex. 15. The reporting officer indicated that Leibstein was gathering further information from the bank "possibly to upgrade charges." *Id.* The responding officers gave him a number to call if he wanted to proceed further. Leibstein later testified that the 911 call may have been a "scare tactic" intended to secure return of the electronic equipment he believed Defeo had in his possession. Leibstein Dep., Lozar Decl. Ex. 2 at 111.

Subsequent to the 911 call, Leibstein called the precinct and was told by Detective Dane Flynn that he would have to come in to make a statement. Leibstein made an appointment to do

---

Statement and Supplemental Facts ("Pl.'s 56.1 Stmt"), DE [91]; and Declaration of Ryan Lozar in Opposition to Defendants' Motion for Summary Judgment ("Lozar Decl."), DE [90].

2

so, and on August 28, 2015, he went to the first precinct in West Babylon to make a sworn complaint against Defeo. Statement, Lozar Decl., Ex. 16. In the statement, Leibstein claimed that Defeo had written himself the disputed check without permission, and that when he asked Defeo why he had written the check, Defeo had responded that he "needed the money" and "it is what it is." *Id.* Leibstein also stated "I want Christopher Defeo arrested for this." *Id.* Leibstein also swore in his statement that he was "the only person who writes business checks for my company." Defeo claims this was an intentionally false statement as Leibstein later testified that others in the company signed checks.

On September 15, 2015, a Misdemeanor Information was issued charging Defeo with Petit Larceny in violation of New York Penal Law §155.25. Lozar Decl., Ex. 19. The officer who completed the Information form checked off a pre-typed line stating that "[t]he charge is based solely upon information and belief, the source(s) being the accompanying statements and/or documents" and finishing that line with the typewritten entry of "GUY LEIBSTEIN." *Id.* An arrest warrant was issued, and Defeo was arrested on September 22, 2015. He spent one (1) night in jail at the time of his arrest.

While the criminal case was pending against Defeo, Leibstein received two or three phone calls from Assistant District Attorneys ("ADAs") regarding the case. Leibstein indicated that he would "settle" for return of the $500. Leibstein Dep. at 91, Lozar Decl., Ex. 2. There is no indication that Leibstein initiated any call to the ADAs.

On November 14, 2016, the prosecution moved to dismiss the criminal case against Defeo pursuant to New York Criminal Procedure Law §170.30(f) "based on the People's extensive investigation in this matter, in reviewing the defendant's records, cellphone as well, as

3

the complaining witness's cellphone records." Transcript at 34, Lozar Decl., Ex. 26. That application was granted, and the charges were "dismissed." *Id.*

**B. Procedural History**

Plaintiff commenced this action on September 15, 2016 against Leibman, Adcomm, and the County Defendants. On or about May 31, 2017, Plaintiff withdrew all claims against the County Defendants, Ds' 56.1 Stmt, ¶ 17; Pl's 56.1 Stmt, ¶17, leaving only Leibstein and Adcomm. He asserts claims of false arrest, malicious prosecution, evidence fabrication, and abuse of process pursuant to both §1983 and New York state law, and defamation under state law only. Pl's 56.1 Stmt, ¶¶11, 13. Defendants now move for summary judgment, arguing, *inter alia,* that Leibstein's conduct does not constitute "state action" for purposes of liability under §1983.

## II. LEGAL STANDARDS

**A. Summary Judgment**

Rule 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In deciding a motion for summary judgment, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst,* 101 F.3d 845, 854 (2d Cir. 1996)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano,* 557 U.S. 557, 586, 129 S. Ct. 2658, 174 L. Ed. 2d 490 (2009) (internal quotation marks and citation omitted); *see also*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

"The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't,* 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Dove v. City of New York*, No. 03-CV-5052, 2007 WL 805786, at *4 (E.D.N.Y. Mar. 15, 2007) (to defeat a motion for summary judgment, "the non-moving party must provide this Court with some basis to believe that his version of relevant events is not fanciful" (internal quotation and citations omitted)). In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986).

**B. Section 1983**

Section 1983 itself does not create substantive rights, but rather, "provides only a procedure for redress for the deprivation of rights established elsewhere." *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir. 1999). In order to maintain a §1983 action, a plaintiff must establish two essential elements: (1) that the defendant acted under color of state law, and (2) that as a result of the defendant's actions, the plaintiff was deprived of a right arising under the Constitution or

federal statute. "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted). The issue of whether an actor's conduct constitutes action "under color of law or as a state actor is a question of law for the court." *Fiedler v. Incandela*, 222 F. Supp. 3d 141, 157 (E.D.N.Y. 2016) (quoting *Vega v. Fox*, 457 F. Supp. 2d 172, 181 (S.D.N.Y. 2006)); *see also Blum v. Yaretsky*, 457 U.S. 991, 997–98, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982) (noting that the question of whether there was state action was an issue of law "to be decided by the District Court"); *P.P. v. City of New York*, No. 13 CIV. 5049, 2014 WL 4704800, at *12 (S.D.N.Y. Sept. 19, 2014) (whether private individuals are state actors under §1983 is a "threshold issue[] of law").

## III. DISCUSSION

### A. Section 1983 Claims

Before proceeding to an analysis of Plaintiff's federal claims, the Court must make a threshold determination as to whether Leibstein's conduct constitutes state action. Section 1983's "under-color-of-state-law element . . . excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S. Ct. 977, 143 L.Ed.2d 130 (1999) (quoting *Blum*, 457 U.S. at 1002). Acts of a private individual are not actionable under §1983 unless those acts are tantamount to action by the state. "It is settled that conduct by a private entity constitutes state action only when 'there is a sufficiently close nexus between the State and the challenged action of the [private] entity so that the action of the latter may be fairly treated as that of the State itself.'" *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 229 (2d Cir. 2004) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351, 95 S. Ct.

6

449, 42 L. Ed. 2d 477 (1974)). Under some circumstances, private conduct can be found to be state action, such as "where the state exercises 'coercive power' over, is 'entwined in [the] management or control' of, or provides 'significant encouragement, either overt or covert' to, a private actor, or where the private actor 'operates as a willful participant in joint activity with the State or its agents,' is 'controlled by an agency of the State,' has been delegated a 'public function' by the state, or is 'entwined with governmental policies.' *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 313 (2d Cir. 2003) (quoting *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 296, 121 S. Ct. 924, 148 L. Ed. 2d 807 (2001)). Defeo suggests that Leibstein's conduct constitutes joint action with the state.

Successful application of the joint action test requires evidence of joint, coordinated behavior by the private individual and the state actor such that "the private citizen and the state official shared a common unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff the rights guaranteed by federal law." *Moritz v. Town of Warwick*, No. 15-CV-5424, 2017 WL 4785462, at *11 (S.D.N.Y. Oct. 19, 2017) (internal quotation marks and citation omitted); *see also Rodriguez v. Winski*, 973 F. Supp. 2d 411, 422 (S.D.N.Y. 2013) ("The touchstone of joint action is often a plan, prearrangement, conspiracy, custom, or policy shared by the private actor and the police" (internal citations and quotations omitted)); *Johnson v. City of New York*, 669 F.Supp.2d 444, 450–51 (S.D.N.Y.2009) ("[A] plaintiff must allege that the private entity and state actors 'carried out a deliberate, previously agreed upon plan,' or that their activity 'constituted a conspiracy or meeting of the minds.'" (quoting *Dahlberg v. Becker*, 748 F.2d 85, 93 (2d Cir. 1984))). While there need not be evidence that conclusively establishes a formal conspiracy, there must be some evidence of the

7

private party and the state actor deliberately acting in concert for the purpose of denying a plaintiff of his rights. There is no such evidence in this case.

The only true state actors involved in this case were the police officers who interacted with Liebstein prior to Defeo's arrest, and the unidentified ADAs who spoke with Liebstein while Defeo's criminal case was pending. Plaintiff points to "Liebstein's affirmative communications and actions" leading to his arrest as inducing the police to act "through officious and undue zeal . . . and fraudulent inducement of officers to act where they otherwise would not have." Pl's Mem. in Opp. at 10. These communications include the 911 call, Liebstein's calls to Detective Flynn to schedule an appointment to come to the precinct, and his visit to the precinct to make a sworn statement. As to Plaintiff's prosecution, he claims that Liebstein took an "active role in making false statements and obfuscating facts from officials to harness their authority for Liebstein's personal ends." *Id.* at 16.

Liebstein's contacts with the police officers pertained to the reporting and filing of his initial report plus a telephone call or calls regarding the procedures to be followed to file the complaint. Although Defeo suggests that Liebstein knew all along that he was making a false accusation, "[t]he provision of information to or summoning of police officers, even if that information is false or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for purposes of § 1983." *Young v. Suffolk Cty.*, 705 F. Supp. 2d 183, 196 (E.D.N.Y. 2010); *see also Rice v. City of New York*, 275 F. Supp. 3d 395, 404 (E.D.N.Y. 2017) ("Section 1983 does not impose civil liability on persons who merely stand to benefit from an assertion of authority under color of law, but only on those who *act* under color of law" (quoting *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 273 (2d Cir. 1999) (emphasis added))). Regarding Liebstein's interactions with the ADAs, Plaintiff focuses

on Leibstein's intentions and actions, but has not presented any evidence of any conduct by the prosecutors that shows a coordinated or tacit plan to deprive Defeo of his rights.

The Court finds that the record is completely devoid of any evidence of joint action between Leibstein and the true state actors. While the Amended Complaint contained allegations of joint activities that, if true, might have supported a finding of state action, Plaintiff has adduced no evidence of joint action at the summary judgment stage.

The Court has reviewed the case law provided by Plaintiff and finds many of those cases to be distinguishable either on their facts or their procedural posture. Plaintiff throughout his papers conflates the threshold requirement that there be state action to impose liability for a federal claim under §1983 with the elements of the alleged constitutional violation. For example, he relies on the Second Circuit's summary decision in *Vlach v. Staiano* for the premise that a person may be liable for false arrest or malicious prosecution if he took an active role in the arrest and prosecution by "giving advice and encouragement or importuning the authorities to act." *Vlach v. Staiano,* 604 F. App'x 77, 78-79 (2d Cir. 2015) (summary order). That case, in which the defendant was a state employee, does not analyze whether the defendant was a state actor. Thus, it has no bearing on this Court's determination of whether Leibstein's conduct amounted to state action.

Plaintiff also relies on *Weintraub v. Bd. of Educ. of City of New York*, for the finding that private parties "may be liable for violation of §1983 where they made false allegations to a city agency that resulted in a deprivation of plaintiff's constitutional rights." *Weintraub v. Bd. of Educ. of City of New York*, 423 F. Supp. 2d 38, 57 (E.D.N.Y. 2006). The *Weintraub* decision is distinguishable on several bases. First, its holding specifically relied upon the reasoning in *Friedman v. New York City Admin. For Children's Servs,* No. 04-CV-3077, 2005 WL 2436219

9

(E.D.N.Y. Sept. 30, 2005), a case that decided a motion to dismiss, not for summary judgment. In *Friedman*, the court found that "assuming the allegations of the complaint to be true," a private doctor's false child abuse complaint leading to an investigation by the Administration for Children's Services "sufficiently pled the joint participation" of the doctor and the state actor to establish state action and defeat the motion to dismiss. *Friedman*, 2005 WL 2436219, at *8. Procedural posture aside, courts interpreting *Weintraub* "have limited its application to the narrow circumstances presented in that case, which involved allegations demonstrating a long-standing vendetta by the private defendant against the plaintiff." *Lienau v. Garcia*, No. 12-CV-6572, 2013 WL 6697834, at *8 (S.D.N.Y. Dec. 19, 2013) (collecting cases); *see also Samtani v. Cherukuri*, No. 11-CV-2159, 2012 WL 1657154, at *4 (E.D.N.Y. May 11, 2012) (noting limitation of *Weintraub* and collecting cases), *vacated on other grounds*, 2012 WL 1821413 (E.D.N.Y. May 18, 2012). Upon review of the facts in this case, this Court similarly finds the holding in *Weintraub* distinguishable.[3]

Given the absence of any evidence of joint action by both Leibstein and the state actors, the Court finds that Leibstein's conduct does not constitute state action. Accordingly, his federal claims pursuant to §1983 are dismissed.

## B. State Law Claims

Having dismissed the federal law claims, the Court turns to the issue of whether it should retain jurisdiction over the pendent state law claims. A court may decline to exercise supplemental jurisdiction over a state claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367 (c)(3). The decision whether to exercise supplemental

---

[3] Additionally, at least one court has called *Weintraub* into question, noting that it "is not persuaded that the holding in *Weintraub* is consistent with the Supreme Court's decision in Lugar [v. Edmondson Oil Co., 457 U.S. 922, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982)]." *Samtani,* 2012 WL 1657154, at *4.

10

jurisdiction over the remaining state law claims is discretionary. *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018). Where this section applies, this Court "must still meaningfully balance the supplemental jurisdiction factors." *Id.* "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 349-50, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988)).

In urging this Court to retain jurisdiction, Plaintiff argues only that interests of judicial economy or convenience would not be served by dismissal without prejudice because "the Parties would then start over in another forum." Pl. Mem. in Opp. at 22. Despite this contention, the Court sees no reason why that would be the case. Discovery conducted in this District could certainly be used in any state court proceeding. The case is ready for trial, and Plaintiff has not argued that a trial in state court would be subject to any undue delay.

Moreover, Plaintiff's malicious prosecution claim presents a legal issue regarding whether the termination of his criminal proceeding pursuant to New York Criminal Procedure Law §170.30(1)(f) was "favorable." Under that provision, a court may dismiss an information or misdemeanor complaint upon the ground that "(f) There exists some other jurisdictional or legal impediment to conviction of the defendant for the offense charged." N.Y. C.P.L. §170.30(1)(f). However, "[n]o federal or state case has decided whether the disposition of a criminal proceeding pursuant to N.Y. CRIM. PROC. L. § 170.30(1)(f) constitutes a per se "favorable" or "not favorable" termination" for purposes of a malicious prosecution claim. *Morgan v. Nassau Cty.*, No. 03CV5109, 2009 WL 2882823, at *18, n.6 (E.D.N.Y. Sept. 2,

2009). Neither the Plaintiff's briefing nor the Court's own research has revealed any case interpreting the effect of a §170.30(1)(f) dismissal. Dismissal without prejudice to refiling in state court may be warranted where interpretation of the state law at issue "would benefit from further development in the state courts." *Spiegel v. Schulmann*, 604 F.3d 72, 83 (2d Cir. 2010).

In light of the dismissal of the federal claims and the presence of an unresolved issue of state law, the Court in its discretion declines to exercise supplemental jurisdiction over the state law claims. Those claims are dismissed without prejudice.[4]

## C. Request for Attorneys' Fees

Defendants seek attorneys' fees pursuant to 42 U.S.C. §1988, which permits the court, in its discretion, to allow the prevailing party to recover a reasonable attorney's fee as part of its costs. Defendants claim that they should be award its attorneys' fees because the §1983 claims were frivolous or groundless. "A claim is frivolous where it lacks an arguable basis either in law or in fact." *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir. 2004) (internal quotation marks omitted). Upon review of this case, the Court declines to exercise its discretion to award attorneys' fees to Defendants.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED; the dismissal of Plaintiff's state law claims is without prejudice to re-filing in state court.

**SO ORDERED**.

   /s/ Sandra J. Feuerstein
Sandra J. Feuerstein
United States District Judge

Dated: November 1, 2018
   Central Islip, New York

---

[4] Plaintiff may re-file his claims in state court. *See* N.Y. C.P.L.R. §205(a).